| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

Case Type: Minnesota False Claims Act

Court File No. 27-CV-19-20248

STATE OF MINNESOTA EX REL.
KEN ELDER,

                Plaintiff-Relator

V.

U.S. BANK, N.A.,

                Defendant.

**AMENDED COMPLAINT**

**FILED UNDER SEAL**
**pursuant to Minn. Stat. § 15C.05(d)**

**NATURE OF THE ACTION**

    1.    Relator Ken Elder, through his undersigned counsel, brings this action, pursuant to the Minnesota False Claims Act (the "FCA" or the "Act"), M.S. § 15C.01 *et seq.*, on behalf of the State of Minnesota, against defendant U.S. Bank, N.A. ("USB") to redress USB's wrongful retention and failure to pay to the State of Minnesota millions of dollars owing on abandoned cashier's checks subject to escheatment pursuant to Minnesota's Uniform Disposition of Unclaimed Property Act (the "UPA"), M.S. § 345.31 *et seq.*, and submission of knowingly false annual abandoned property reports to the Commissioner of Commerce (the "Commissioner") to conceal and perpetuate its violations of the UPA.

    2.    In this Complaint, Relator demonstrates that from at least 2012 to date (and, on information and belief, in earlier years as well), defendant USB

        (i)    has knowingly failed to pay to the Commissioner, in violation of the UPA, the amounts owing on uncashed cashier's checks in its possession subject to mandatory escheatment pursuant to the UPA; and

  (ii) has submitted false reports to the Commissioner, in violation of the UPA, that knowingly failed to list its uncashed cashier's checks properly subject to escheatment and falsely verified the reports' accuracy.

3. Relator contends that USB, acting as aforesaid, violated:

  (i) § 15C.02(a)(4) of the FCA, in that USB has knowingly maintained wrongful possession, custody or control of money used or to be used by the State of Minnesota and knowingly delivered less than all of that money to the State;

  (ii) § 15C.02(a)(7) of the FCA, in that USB has knowingly concealed or knowingly and improperly avoided or decreased its obligation to pay or transmit money to the State; and

  (iii) § 15C.02(a)(7) of the FCA, in that USB has knowingly made, used, or caused to be made or used, false records or statements material to USB's obligation to pay or transmit money to the State.

4. Relator contends that USB is liable, pursuant to § 15C.02(a) of the FCA, for three times the amount of all damages the State of Minnesota has sustained by reason of defendant USB's wrongful conduct and civil penalties.

## I. JURISDICTION

5. The jurisdiction of this Court is invoked pursuant to § 15C.05(a) of the FCA. In accordance with § 15C.05(d) of the Act, this Amended Complaint is being filed with the court in chambers for placement under seal.

## II. PARTIES

6. Relator Ken Elder is a resident of the State of Michigan.

7. Defendant U.S. Bank, N.A. ("USB") is a national bank, with its main office in the State of Ohio, its principal place of business in Minnesota, and branch offices in Minnesota and numerous other states throughout the country. Defendant USB is a "banking organization," as defined in UPA § 345.31-2, and a "business association," as defined in UPA § 345.31-3.

### III. STATEMENT OF THE CASE

#### A. USB's Payment and Reporting Obligations under the UPA with respect to Uncashed Cashier's Checks

8. At all times mentioned herein, as a "banking organization" and "business association" (as those terms are defined in the UPA) doing business in the State of Minnesota, defendant USB has been required to comply with the provisions of the UPA.

9. The UPA defines the categories of property that are subject to escheatment to the State of Minnesota; specifies the applicable period after which such property will be deemed abandoned and escheats to the State; and sets forth the reporting and payment obligations applicable to holders of escheated property.

10. The UPA provides that any cashier's check issued by a banking organization doing business in the State of Minnesota, including defendant USB, that was (a) issued in Minnesota, or (b) was issued in a State other than Minnesota that does not provide for the escheatment of such check shall be presumed abandoned and escheat to the State of Minnesota if uncashed three years after issuance. UPA § 345.32(c).

11. At all times mentioned herein, banking organizations doing business in the State of Minnesota, including defendant USB, have been required to file verified reports with the Commissioner by October 31 of each year identifying all abandoned property in their possession, including uncashed cashier's checks, subject to escheatment pursuant to the UPA as of the preceding June 30. UPA §345.41.

12. These annual abandoned property reports to the Commissioner are material to the State's verification of holders' annual compliance with the UPA and are relied upon by the Commissioner to verify that each banking organization (and other holder) subject to the UPA has

3

complied with its obligations under the UPA, including its obligation to pay the amounts owing on its cashier's checks that are subject to escheatment to the State of Minnesota.

13. At all times mentioned herein, the UPA has required banking organizations doing business in the State of Minnesota, including defendant USB, to pay to the Commissioner on an annual basis no later than October 31 of each year the amounts owing on any cashier's checks subject to escheatment to the State of Minnesota as of June 30 of each year. UPA § 345.43.

14. Thus, with respect to all cashier's checks subject to escheatment to the State of Minnesota from 2012 to date that remained uncashed three years from date of issuance as of June 30 of each year, the UPA has required USB to (a) identify all such checks in a verified report to the Commissioner no later than October 31 of each year; and (b) to accompany its reports with payment of the amounts owed on the abandoned cashier's checks listed in the report.

    **B.**    **USB's Breach of its Obligation to Pay to the Commissioner the Amounts Owing on Abandoned Cashier's Checks Subject to Escheatment to the State of Minnesota.**

15. As described below, defendant USB has, since 2012 (and, on information and belief, in prior years) and continuing to date, knowingly failed to pay to the Commissioner millions of dollars in amounts owing on thousands of uncashed cashier's checks subject to escheatment to the State of Minneosota pursuant to the UPA and has knowingly filed false annual abandoned property reports with the Commissioner each year omitting such checks from the listing of its abandoned property subject to escheatment as of June 30 of each year.

16. At all times mentioned herein, defendant USB has maintained a business function with designated responsibility for complying with defendant USB's escheatment obligations in Minnesota and other States.

17. At all times mentioned herein, executives in defendant USB's abandoned property business function and the personnel who report to them have been responsible (a) for causing defendant USB to identify its abandoned property that is subject to escheatment; (b) for preparing annual reports to be filed in Minnesota (and other States) certifying to USB's abandoned property subject to escheatment in Minnesota (and other States); and (c) for causing defendant USB to pay the amounts owing on its abandoned property subject to escheatment in Minnesota (and other States) to the Commissioner (and to the appropriate authority in other States).

18. USB maintains internal records pertaining to each cashier's check it issues, including the identity of each check purchaser, the date of purchase and the branch at which each check was purchased or issued. In addition, USB sells cashier's checks to its account holders, whose last known address is maintained in USB's records. Where, as is often case, a cashier's check is purchased at a USB branch by a USB account holder for his or her own benefit, USB's records identify the purchaser/payee and, thus, contain the last known address of the owner of the check as well as the location at which the check was purchased.

19. Accordingly, at all times mentioned herein, USB has known and has had the ability to determine from its books and records the State in which each of its uncashed cashier's checks was issued. USB's records further contain, at a minimum, the last known address of a substantial number of cashier's check owners who purchased the check for themselves.

5

20. USB has, thus, at all times mentioned herein been in possession of information sufficient to enable it to comply with its escheatment obligations pursuant to the UPA with respect to its uncashed cashier's checks subject to escheatment to the State of Minnesota pursuant to the UPA.

21. Defendant USB benefits by employing business strategies to minimize its escheatment obligations because such strategies enable it to retain the amounts owing on unclaimed property. In particular, as applicable here, defendant USB's application of one State's escheatment laws over another's can provide USB with substantial financial benefit, either permanently (where a particular State's laws do not require escheatment of a specified category of property at all) or temporarily (where one State's laws provide for a longer waiting period than another's before a specified category of property is deemed abandoned and becomes subject to escheatment or do not require payment of the full aggregate value of the unclaimed property being held by defendant USB).

22. The State of Ohio has adopted escheatment laws that are more favorable to businesses holding abandoned property than the escheatment laws of Minnesota (and some other States). For example, unlike Minnesota, Ohio does not require holders of abandoned property to deliver the full amount of the abandoned funds they are holding, but rather allows the holders to satisfy their payment obligations by paying 10% of the aggregate value of the abandoned funds they report. Ohio St. § 169.05(A). Ohio, further, exempts business-to-business transactions from escheatment. Ohio St. § 169.01(B)(2). And, specifically with respect to abandoned cashier's checks, Ohio – unlike Minnesota (and many other States), which require escheatment of cashier's

checks that remain uncashed and outstanding three years after their issuance – has a five-year waiting period before an uncashed cashier's check is deemed abandoned. Ohio St. § 169.02(F).

23. On an annual basis, defendant USB holds millions of dollars in cashier's checks that remain uncashed and outstanding for more than three years from the date of their issuance. Every additional year that defendant USB can retain possession, in whole or in part, of the cash value of such abandoned cashier's checks before paying the amounts owing on such checks pursuant to escheatment is of substantial financial value to defendant USB and, to the extent that defendant USB need only post 10% of the aggregate value of such checks, it gains the value of 90% of the abandoned cashier's checks indefinitely.

24. Defendant USB has, since 2012 (and, on information and belief, in years prior thereto) and continuing to date, wrongly determined to falsely exploit the favorable aspects of Ohio's escheatment laws applicable to unclashed cashier's checks subject to escheatment to the State of Minnesota (and other non-Ohio States in which USB does business) by fraudulently asserting that the uncashed cashier's checks it is holding that are properly subject to escheatment to the State of Minnesota pursuant to the UPA and to other non-Ohio States pursuant to those States' unclaimed property laws are subject to Ohio's escheatment laws (on Ohio's five-year abandonment timetable). Defendant USB has filed false reports with the Commissioner (and in the other States in which such uncashed cashier's checks were properly subject to escheatment) omitting such checks from the descriptions of unclaimed property subject to escheatment in Minnesota and such other States and has further filed false reports with the State of Ohio representing that such unclaimed cashier's checks were subject to Ohio escheatment laws. And, defendant USB has further knowingly failed to pay the amounts owing on the unclaimed cashier's checks subject to

7

escheatment to Minnesota to the Commissioner in accordance with the UPA or to the appropriate authorities in such other non-Ohio States.

25. On an annual basis, defendant USB has, since 2014 and through 2019 (the last year Relator has been able to investigate to date), fraudulently taken the position that it was holding, purportedly subject to Ohio's escheatment laws, over 80,000 abandoned cashier's checks, with a value of approximately $39.8 million, as follows:

| Year | Checks | Value |
|---|---|---|
| 2014 | 3,576+ checks | $ 1,642,016.96 |
| 2015 | 4,389+ checks | $ 2,795,565.46 |
| 2016 | 10,828+ checks | $ 8,797,328.98 |
| 2017 | 38,513+ checks | $10,770,051.10 |
| 2018 | 14,112+ checks | $ 9,589,490.97 |
| 2019 | 11,030+ checks | $ 4,228,938.16 |
| Total | 82,448+ checks | $39,823,391.63 |

Of defendant USB's 3,100+ bank branches, fewer than 9% (approximately 276) are located in Ohio, and the overwhelming majority (90%+) of these checks were not subject to Ohio's escheatment laws; the amounts owing on them should have been delivered to the State of Minnesota or other non-Ohio States in accordance with Minnesota's escheatment laws or the escheatment laws of such other non-Ohio States.

26. Relator has made an independent investigation of the USB data available for the period from 2014 through 2019 (the last year for which data has currently been available to Relator) and has determined that during those years there were thousands of abandoned cashier's checks purchased in Minnesota or subject to the escheatment laws of other States not including Ohio that

remained unclaimed beyond the applicable abandonment period for Minnesota and other States, including numerous abandoned checks made payable (a) to businesses, governmental entities and individuals in Minnesota, or (b) to similar payees in States other than Ohio, making it extremely implausible that such cashier's checks were subject to escheatment to Ohio.

27. For example, in 2015, USB took the position that over 4,389 unclaimed cashier's checks, with a face value of over $2.79 million, that remained uncashed <u>five</u> years from issuance, were subject to escheatment in Ohio. The overwhelming majority of those checks were not subject to escheatment to the State of Ohio and should have been reported and the amounts owing on them delivered to the State of Minnesota or to other non-Ohio States in accordance with the escheatment laws of those States (including such States' abandonment periods applicable to uncashed cashier's checks). Among many other examples, defendant USB's unclaimed cashier's checks in 2015 (that USB falsely represented were subject to Ohio's escheatment laws) included checks on which the payees were identified as such clearly Minnesota-based payees as Minnesota Secretary of State, Minnesota Department of Human Rights, Chicago Dept of Water Management, Chicago Title, Minnesota State Board of Education, Minnesota Dept of Revenue, Cook County, Consulate General Of India Chicago, City of Peoria, Cook County Commissioner, Minnesota Charity Bureau Fund, City of Chicago, Minnesota State Police, and so on. It is highly likely that these (and many other) abandoned cashier's checks were issued in Minnesota and, therefore, should have been reported and the amounts owing on them paid to Minnesota.

28. Moreover, as to many of these 4,000+ checks, the payees were identified as such plainly non-Ohio entities as the California Department of Motor Vehicles, Commissioner State of Idaho, Los Angeles Superior Court, WI Department of Revenue, Michigan Workers

9

Compensation, City of Little Rock, St Louis Construction Laborers Pension Fund, Arkansas Department of Finance and Admin, Nebraska Liquor Commission, Wisconsin Orthodontics Specialists, City of Sioux Falls, Arkansas Blue Cross Blue Shield, City of Albuquerque, Arizona Department of Public Safety, Colorado Springs Utilities, City of Milwaukee, Nebraska Department of Environmental Qual, State of Wisconsin Department of Public Health, So Dakota Department of Revenue, Univ of Iowa Dance Marathon, Work for Wisconsin, Conservatives Montana, Oregon Dept of Transportation, and so on.  As to these uncashed cashier's checks, defendant USB represented in its reports to the State of Ohio that its books and records do not contain a last known address for the checks' owners, and under such circumstances, the checks were not subject to Ohio's escheatment laws and were required to be escheated to the State of Minnesota.

29. The abandoned cashier's checks defendant USB was holding in 2014, 2016, 2017 and 2019 are substantially the same as those noted for 2015 above insofar as they reflect large numbers of Minnesota-based payees (as to which it is likely the checks were issued in Minnesota) and large numbers of other checks (as to which USB represented its books and records lack a last known address of the checks' owners).  All of those abandoned checks should have been reported and the amounts owing on them paid the State of Minnesota

30. In support of its fraudulent invocation of Ohio escheatment law as to its uncashed cashier's checks, USB has asserted to the State of Ohio that it does not have information as to the last known address of each of the checks' owners.  But even if that were the case (which, as discussed above, it is not), USB is not following Ohio law, which is further evidence that it is acting falsely and fraudulently.

31. Ohio escheatment law provides that where the address of record for the owner or other person entitled to the funds of an unclaimed cashier's check is unknown, "such address is presumed to be the address where the instrument was certified or issued." Ohio St. § 169.02(F). Pursuant to Ohio St. § 169.04, unclaimed property held for or owed "to an owner whose last known address is in another state by a holder who is subject to the jurisdiction of that state, the funds will not be unclaimed funds in [Ohio] and subject to [the Ohio Unclaimed Property Act]." Accordingly, Ohio law mandates that for any unclaimed cashier's checks not purchased in Ohio, they are deemed subject to the laws of the actual States of purchase, and Ohio escheatment does not, on its face, apply to such checks. Defendant USB's invocation of Ohio escheatment law with respect to the uncashed cashier's checks purchased in other States that it is holding is, thus, lacking in any basis under Ohio law and is plainly knowingly false.

32. Moreover, USB's representations from 2014 to date that it does not know the last address of the owners of all of the cashier's checks it has reported as abandoned to the State of Ohio are false. USB regularly sells cashier's checks to its account holders, many of whom purchase the cashier's checks for themselves. As to such checks, including such checks issued in Minnesota, USB's records contain the last known address of every purchaser/payee-owner. Thus, USB has knowingly failed to report and pay to the State of Minnesota the amounts owing on abandoned cashier's checks.

33. Based on the all of the above, it is clear that defendant USB has knowingly failed to deliver to the Commissioner prior to November 1 of each year, from at least 2014 to 2019 (and likely in 2020 as well), the amounts owing on cashier's checks subject to escheatment to the State of Minnesota that remained uncashed, as of June 30 each year, for three years from issuance;

11

knowingly filed false verified reports with the Commissioner omitting such checks from the list of USB property subject to escheatment in each year; and has continued to fail to pay the amounts owing on such checks or to file complete and accurate reports to date.

34. As stated above, defendant USB has, at all relevant times, maintained a business function whose personnel are trained in the requirements of the escheatment laws of the various States (including Minnesota) and are responsible for USB's compliance with those requirements. Defendant USB's executives with responsibility for insuring USB's compliance with Minnesota' (and other States') escheatment laws know (or recklessly have failed to know) of the provisions of Minnesota laws pertaining to escheatment, payment and reporting of unclaimed cashier's checks. Despite their knowledge of the requirements of state escheatment law, defendant USB has improperly taken the position that millions of dollars in unclaimed cashier's checks properly subject to escheatment to Minnesota (and other non-Ohio States) were subject to escheatment to Ohio in order to benefit from Ohio's more favorable escheatment laws, which would not have been available if the unclaimed cashier's checks had been delivered to the Commissioner as required by the UPA (and the escheatment laws of other non-Ohio States).

35. USB's failure to deliver to the Commissioner unclaimed cashier's checks subject to escheatment to the State of Minnesota as aforesaid was in knowing violation of the UPA and has enabled defendant USB to maintain wrongful possession and the benefit of money used or to be used by the State of Minnesota and knowingly deliver less than all of that money or property to the State.

**C.     USB's Submission of False Annual Reports to the State of Minnesota**

36.    In furtherance of defendant USB's wrongful and knowing failure to pay to the State of Minnesota the amounts owing on abandoned cashier's checks, as required by the UPA, executives in defendant USB's abandoned property business function have caused defendant USB, on or about November 1 of each year from 2014 through 2019 (and on information and belief, in prior years, and 2020 as well), to file knowingly false abandoned property reports with the Commissioner that intentionally failed to list the abandoned cashier's checks in defendant USB's possession that were subject to escheatment to the State of Minnesota each year and falsely verified that the reports were complete and accurate.  These reports, which are not publicly available to Relator, were signed either by defendant USB's chief fiscal officer or other executives in defendant USB's unclaimed property business function or by other USB executives at the direction of defendant USB's chief fiscal officer or executives in defendant USB's unclaimed property business function.

37.    Executives in defendant USB's unclaimed property business function have caused defendant USB to knowingly conceal or knowingly and improperly avoid its obligation to pay or transmit the amounts owing on such unclaimed cashier's checks to the Commissioner.

38.    Thus, in conjunction with its fraudulent failure to pay to the Commissioner the amounts owing on its uncashed cashier's checks subject to escheatment as of June 30, 2019, defendant USB, on or about November 1, 2019, filed a false report with the Commissioner failing to list such checks and falsely verifying that the report was complete and accurate.

39. Thus, in conjunction with its fraudulent failure to pay to the Commissioner the amounts owing on its uncashed cashier's checks subject to escheatment as of June 30, 2018, defendant USB, on or about November 1, 2018, filed a false report with the Commissioner failing to list such checks and falsely verifying that the report was complete and accurate.

40. Thus, in conjunction with its fraudulent failure to pay to the Commissioner the amounts owing on its uncashed cashier's checks subject to escheatment as of June 30, 2017, defendant USB, on or about November 1, 2017, filed a false report with the Commissioner failing to list such checks and falsely verifying that the report was complete and accurate.

41. Thus, in conjunction with its fraudulent failure to pay to the Commissioner the amounts owing on its uncashed cashier's checks subject to escheatment as of June 30, 2016, defendant USB, on or about November 1, 2016, filed a false report with the Commissioner failing to list such checks and falsely verifying that the report was complete and accurate.

42. Thus, in conjunction with its fraudulent failure to pay to the Commissioner the amounts owing on its uncashed cashier's checks subject to escheatment as of June 30, 2015, defendant USB, on or about November 1, 2015, filed a false report with the Commissioner failing to list such checks and falsely verifying that the report was complete and accurate.

43. Thus, in conjunction with its fraudulent failure to pay to the Commissioner the amounts owing on its uncashed cashier's checks subject to escheatment as of June 30, 2014, defendant USB, on or about November 1, 2014, filed a false report with the Commissioner failing to list such checks and falsely verifying that the report was complete and accurate.

44. Thus, in conjunction with its fraudulent failure to pay to the Commissioner the amounts owing on its uncashed cashier's checks subject to escheatment as of June 30, 2013, defendant USB, on or about November 1, 2013, filed a false report with the Commissioner failing to list such checks and falsely verifying that the report was complete and accurate.

45. Thus, in conjunction with its fraudulent failure to pay to the Commissioner the amounts owing on its uncashed cashier's checks subject to escheatment as of June 30, 2012, defendant USB, on or about November 1, 2012, filed a false report with the Commissioner failing to list such checks and falsely verifying that the report was complete and accurate.

46. And, based on USB's pattern of wrongful conduct as aforesaid, Relator believes it is highly likely that USB similarly filed a false report with the Commissioner for 2020 that failed to list the uncashed cashier's checks subject to escheatment to the State of Minnesota as of June 30, 2020 and falsely verifying that the report was complete and accurate.

### D. The State of Minnesota's Losses Resulting from USB's Wrongful Conduct

47. Defendant USB's failure to report and deliver to the Commissioner the cashier's checks that remained uncashed three years from date of purchase and that were subject to escheatment pursuant to the UPA , as aforesaid, has deprived the State of Minnesota of the possession, custody or control of money used or to be used by the State.  Through its wrongful conduct, defendant USB has deprived the State of Minnesota of millions of dollars in sums owing on uncashed cashier's checks.

48. Defendant USB's false annual reports to the Commissioner from 2012 to 2019 (and, on information and belief, in earlier years as well as in 2020) that knowingly failed to identify its abandoned cashier's checks properly subject to escheatment to the State of Minnesota pursuant to

the UPA were intended to and had the effect of concealing defendant USB's wrongful conduct and preventing the Commissioner and other State of Minnesota authorities from learning of and taking steps to remedy defendant USB's failure to deliver such payments to the Commissioner in accordance with the UPA.

49. Defendant USB delivered the false reports to the Commissioner from 2012 to date (and, on information and belief, in earlier years as well as in 2020), as described above, in order to conceal its liability for its wrongly withheld payments.

**CLAIM FOR RELIEF**

50. Paragraphs 1 through 49 of this Amended Complaint are incorporated as paragraphs 1 through 48 of this Claim for Relief.

51. Defendant USB, acting as aforesaid, violated § 15C.02(a)(4) of the FCA, in that USB has knowingly maintained wrongful possession, custody or control of property or money used or to be used by the State of Minnesota and knowingly delivered less than all of that money or property to the State.

52. Defendant USB, acting as aforesaid, violated § 15C.02(a)(7) of the FCA, in that USB has knowingly concealed or knowingly and improperly avoided or decreased its obligation to pay or transmit money to the State.

53. Defendant USB, acting as aforesaid, violated § 15C.02(a)(7) of the FCA, in that USB has knowingly made, used, or caused to be made or used, false records or statements material to USB's obligation to pay or transmit money to the State.

54. The State of Minnesota has sustained damages as a result of defendant USB's wrongful conduct as aforesaid, including loss of money, loss of use of money, and loss of the interest on the undelivered funds.

55. Defendant USB is liable, pursuant to § 15C.02(a) of the Minnesota False Claims Act, for civil penalties, plus three times the amount of all damages, including consequential damages, which the State of Minnesota has sustained by reason of defendant USB's wrongful conduct.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Relator Ken Elder prays for the following relief:

1. Three times the amount of all damages, including all consequential damages, which the State of Minnesota has sustained because of defendant USB's wrongful conduct and violations of the Minnesota False Claims Act, as provided by § 15C.02(a) of the Act.

2. Civil penalties pursuant to § 15C.02(a) of the Minnesota False Claims Act.

3. An award to Relator of a relator's fee in accordance with § 15C.13 of the Minnesota False Claims Act.

4. An award to Relator of his costs, including attorneys' fees, incurred in prosecuting this action, in accordance with §15.12 of the Minnesota False Claims Act.

5. Such other relief as the Court deems equitable.

Plaintiff Relator, State of Minnesota ex rel. Ken Elder

By:   */s/ David S. Golub*
      One of his attorneys

SILVER GOLUB & TEITELL LLP
BY: David S. Golub *(Pro Hac Vice pending)*
Steven L. Bloch *(Pro Hac Vice pending)*
Ian W. Sloss *(Pro Hac Vice pending)*
184 Atlantic Street
Stamford, CT 06901
Tel.: (203) 325-4491
Fac.: (203) 325-3769
Email: dgolub@sgtlaw.com
       sbloch@sgtlaw.com
       isloss@sgtlaw.com

GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP
BY: Michael S. Devorkin *(Pro Hac Vice pending)*
711 Third Avenue
New York, NY 10017
Tel.: (212) 907-7248
Fac.: (212) 754-0330
Email: mdevorkin@golenbock.com

and

ALAN J. WILENSKY, ESQ.
BY:   Alan J. Wilensky
4900 IDS Center
80 So. Eighth Street
Minneapolis, MN 55402
Tel.: (612) 834-4393
Email: ajwilensky7@gmail.com